**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re United Hauling LLC,<br><br>Debtor, <br><br>United Hauling LLC,<br><br>Appellant,<br><br>v.<br><br>Iron Rings Holdings LLC, IG Holdings, Inc,<br><br>Appellees. | No. CV-26-00088-PHX-JAT<br><br>Case No.: 2:25-bk-03680-DPC<br><br>**ORDER** |

  Pending before the Court is United Hauling LLC's ("Debtor") Emergency Motion for Stay Pending Appeal. (Doc. 5). The Motion is fully briefed, (Doc. 5, 10, 12), and the Court now rules.

**I.  BACKGROUND**

  In March 2024, Debtor signed a promissory note agreeing to borrow from and repay Iron Rings Holdings LLC and IG Holdings, Inc. ("Lenders") $400,000, plus interest. (Doc. 5-13 at 18; Doc. 5-13 at 22). The Note was secured by a deed of trust ("the Loan") that was recorded against a residential property located at 5443 East Skinner Drive, Cave Creek, AZ 85331 ("the Property"). (Doc. 5-13 at 18). The Note required monthly interest-only payments of $8,666.67 at a 26% annual interest rate, with all amounts due in full on March 6, 2025. (Doc. 5-13 at 22). Payments submitted at least thirty days late triggered a 31% per-annum default charge "over the [26%] interest rate," yielding an effective default rate

of 57%. (Doc. 5-13 at 22). Payments that were ten or more days late accrued a flat, late charge of $100 per day. (Doc. 5-13 at 22).

Debtor defaulted in August 2024 and filed for Bankruptcy in April 2025. (Doc. 10 at 2). In July 2025, Lenders filed its initial Proof of Claim ("POC"), asserting a secured claim of $594,193.66. (Doc. 5-6 at 1–3). In August, Lenders requested relief from the automatic stay required by 11 U.S.C. § 362(a) so that it could proceed with a trustee's sale of the Property. (Doc. 10-1 at 2).[1] Debtor objected to the POC for various reasons, contending, as relevant here, that Lenders' POC overstated the amount owed under the Loan. (Doc. 5-8 at 4–5). Although Lenders subsequently amended the POC to account for the overstatement—lowering the secured claim value to $566,826.99—Debtor still argued that the original POC violated A.R.S. § 44-1202 and required forfeiture of *all* interest. (Doc. 5-10 at 1-4 (amended POC); Doc. 5-8 at 5-6). The Bankruptcy Court found no violation under A.R.S. § 44-1202 and denied Debtor's claim objections on that basis. (Doc. 5-12 at 7). Debtor moved for reconsideration of the § 44-1202 ruling, (Doc. 5-13), which the Bankruptcy Court denied, (Doc. 10-5 at 2).

Debtor filed a notice of appeal to this Court challenging the § 44-1202 ruling and the denial of its motion for reconsideration. (Doc. 1). Debtor simultaneously moved the Bankruptcy Court to stay all further bankruptcy proceedings—including an upcoming evidentiary trial scheduled for January 21-22, 2026—pending this Court's resolution of the § 44-1202 ruling. (Doc. 5-4). The Bankruptcy Court denied Debtor's stay request pending appeal. (Doc. 5-3 at 2). Debtor subsequently filed the pending motion, (Doc. 5), asking this Court to halt all bankruptcy proceedings pending the resolution of its appeal.

## II.    LEGAL STANDARD

"A stay is not a matter of right, even if irreparable injury might otherwise result," and is instead "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). "The party

---

[1] Lenders' Motion for Relief from the Automatic Stay (Doc. 10-1 at 2) remains pending before the Bankruptcy Court and is scheduled to be addressed during a trial taking place January 21-22, 2026.

requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In determining whether to grant or deny a request to stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The likelihood of success and irreparable injury factors are the "most critical," *Nken*, 556 U.S. at 434, and "fall on a sliding scale in which the degree of irreparable harm increases as the probability of success [on the merits] decreases," *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). "On one end of the continuum, the proponent must show a strong likelihood of success on the merits and at least the possibility of irreparable injury to the proponent if preliminary relief is not granted." *Id.* (cleaned up) (quotation omitted). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised [as to the merits of the pending appeal] and that the balance of hardships tips sharply in [the moving party's] favor." *Id.* (quotation omitted).

**III.   DISCUSSION**

Debtor asks the Court to stay the underlying bankruptcy proceedings pending an appellate resolution of the A.R.S. § 44-1202 forfeiture issue. The Court begins by addressing the first two stay factors—whether Debtor is likely to succeed on the merits of its appeal and whether it will suffer irreparable harm absent a stay.

**Likelihood of Success on the Merits & Irreparable Harm**

Debtor's Reply clarifies that its appeal rests on two distinct theories: (1) that Lenders, by originally filing an "inflated" POC, "attempted" to collect more interest than what was owed under the parties' contract, (Doc. 5 at 5); and (2) that Lenders, by including a $100-per-day late charge in addition to the contract's 57% default interest rate, increased its "effective rate of return beyond that permitted by Arizona law" and unlawfully collected

"indirect interest," (Doc. 12 at 2). Debtor contends that the overstated POC and the Note's $100-per-day late charge violate A.R.S. § 44-1202, thereby resulting in forfeiture of Lenders' right to collect any interest. (Doc. 5-8 at 6; Doc. 5 at 5).

The Court addresses each of Debtor's theories in turn, and will begin with the statute at issue, which provides:

> A person shall not directly or indirectly ***take or receive*** in money, goods or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods or things in action, than the maximum permitted by law. Any person, contracting for, ***reserving or receiving***, directly or indirectly, any greater sum of value shall, forfeit all interest.

A.R.S. § 44-1202 (emphasis added).

i. Overstated POC

Debtor contends that Lenders attempted to collect excessive interest by overstating the amount due on the loan in the original POC. Debtor specifically argues that Lenders "reserved" the right to payment beyond what was owed under the contract. (Doc. 5 at 6). Debtor interprets the word "reserving" under the statute broadly, asserting that "reserving" funds does not necessarily require "physical retention of the funds, but merely [involves] the assertion of a legal right in the future." (Doc. 5 at 6). Debtor claims that the legislature, by including the terms "reserving" and "receiving" intended to "capture *asserted* claims," in addition to the actual receipt of unlawful interest. (Doc. 5 at 7) (emphasis added).

The Bankruptcy Court found that Lenders' "calculation error" in its original POC "did not trigger Arizona's usury statute because Lenders filed a subsequent amended proof of claim correcting its earlier mistakes." (Doc. 5-12 at 6). Like the Bankruptcy Court, this Court finds that the facts of this case do not meet the statute's requirement that–for interest to be forfeited–the creditor must have taken or received an excess payment. Debtor alleges that Lenders *attempted* to exact unlawful interest but impliedly concedes that Lenders did not *actually* collect more interest than the contract permitted. In any event, Lenders corrected the mistake in the original POC—the amended document now reflects the correct balance owed, thus eliminating any future risk of collecting excessive interest.

- 4 -

However, whether Lenders "reserved" an excess payment is a more challenging question. As the Court reads Debtor's argument, for Debtor to prevail, the Court must interpret the word "reserving" as "reserving *the right to receive*" excess interest. It seems clear to this Court that filing a proof of claim in a bankruptcy case and filing a case in the Maricopa County Superior Court (both of which Lenders did in this case) was reserving the right to collect the amount of interest alleged. But the statute does not contain the language "reserves the right"; it merely penalizes "reserving . . . any greater sum of value" than what is owed. A.R.S. § 44-1202.

In the limited time the Court has had to review the issues in this case, the Court has not had time to survey all other jurisdictions to see if any have a similar statute to A.R.S. § 44-1202 and, if yes, determine how their courts interpret it. Thus, the Court, having found no Arizona law on this issue (which appears consistent with the Bankruptcy Court's research efforts) is limited to a plain reading of the statute.

A plain reading of the word "reserved" in the lending context typically means something akin to "impounded escrow funds." In other words, when a payment is made, the lender "reserves" for its own use those funds and applies them to interest, and sometimes principal, taxes or insurance. These funds might be "reserved" in the lender's escrow account for some time. Considering this typical use of "reserve" in the context of lending, Lenders did not receive any funds that were excess interest and accordingly never had an opportunity to reserve for their own use funds that were excess interest. Debtor has cited no law that would contradict this interpretation.

Accordingly, Debtor has failed to demonstrate a strong likelihood of success on the merits on its claims arising under A.R.S. § 44-1202.

Finally, at Document 12 page 5, Debtor repeats that it is making a "usury" claim to challenge the interest in this case.[2] The parties and the Bankruptcy Court seem to accept

---

[2] "Under Arizona law, the elements of a cause of action for usury include: (1) an unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan or something in excess of what is allowed by law. *Britz v. Kinsvater*, 351 P.2d 986, 989 (Ariz. 1960)." *Quijada v. Am. Home Mortg. Servicing, Inc.*, No. CV 10-576-TUC-RCC, 2011 WL 13301216, at *2 (D. Ariz. Mar. 2,

- 5 -

that such claim is limited to challenges arising under A.R.S. § 44-1202. Thus, the Court has considered only claims arising under A.R.S. § 44-1202.

### ii. "Indirect Interest" Collected from $100-per-day Late Charge

Debtor effectively argues that the contract's $100-per-day late charge, while categorized as a flat late fee, operates as "indirect interest" and increases Lenders' effective rate of return beyond the contracted-for 57% default interest rate. (Doc. 12 at 2). Debtor alleges that this "indirect interest" is subject to forfeiture under A.R.S. § 44-1202. (Doc. 12 at 2).

Debtor raises this argument for the first time in its reply brief with limited authority to support its novel "indirect interest" theory. Because Lenders have had no opportunity to respond and the Court lacks the benefit of full briefing on the issue, the Court is hesitant to conclude that Debtor is likely to succeed on the merits under this theory.

The Court acknowledges that a stay applicant's failure to demonstrate "strong likelihood of success on the merits" does not necessarily preclude relief—indeed, a stay pending appeal may still be warranted if the applicant can demonstrate (1) that they raised serious legal questions going to the merits and (2) a high degree of irreparable injury. *Mi Familia Vota*, 111 F.4th at 981, 984. Even assuming that Debtor raised serious questions regarding the merits of the § 44-1202 issue, granting Debtor's requested relief would be improper because Debtor has not shown that it will be irreparably harmed by allowing the underlying bankruptcy proceedings—including the January 21-22, 2026 trial—to continue concurrently with its appeal.

At the upcoming trial, the Bankruptcy Court will determine whether (1) to grant Lenders' request to lift the automatic stay, and (2) confirm Debtor's plan to protect Lenders' secured claim. (Doc. 11-1 at 27; Doc. 10 at 13-14). Debtor submits that

> [a]llowing the [Bankruptcy] Court's ruling on ARS § 44-1202 to remain in effect during the pendency of the appeal threatens to irreversibly alter the status quo. ***If*** the contract rates are applied ***after trial and pending appeal***, the asserted debt - originating as a $400,000.00 loan in March 2024 - will continue to grow exponentially, exceeding $800,000.00 by the time of trial, ***potentially*** leading to stay relief and foreclosure before appellate review can

2011).

- 6 -

> occur.
>
> A Trustee's Sale is currently scheduled for January 27, 2026. *If* the Property is sold, Debtor's appeal will be rendered equitably and constitutionally moot, and no appellate court can restore the Property to the estate or unwind the sale.

(Doc. 5 at 8–9) (emphasis added).

Debtor is speculating about harm it could *potentially* suffer based a *possible* outcome from the January evidentiary trial, which has not yet occurred. At trial, the Bankruptcy Court could grant Lenders relief from the automatic stay and deny confirmation of Debtor's plan; but it could also decline to lift the stay and confirm Debtor's plan. It is true that the former result would lead to foreclosure of the Property, but Debtor does not allege that this outcome is probable or likely to occur. *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (stay applicant must show that "irreparable harm is probable, absent a stay"). Merely referencing one *possible* result of a future trial does not show that Debtor will suffer imminent, irreparable harm without a stay. *Nken*, 556 U.S. at 434–35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor."). Because Debtor's claimed harm is speculative, premature, and contingent on the forthcoming trial, Debtor fails to carry its burden on the irreparable harm factor.

Beyond the January 21-22 evidentiary trial, the Court also notes that a foreclosure sale is currently scheduled for January 27, 2026. The Court declines to determine whether to stay the foreclosure sale, as this issue may be mooted based on the outcome of trial.[3] Moreover, the Court unclear how a firm sale date has been established when Lenders' motion to lift the stay and allow the sale to proceed remains pending before the Bankruptcy Court. (Doc. 10 at 3). Thus, the Court will not stay the sale at this time.

Because Debtor fails to demonstrate irreparable harm, the Court need not consider the final two stay factors. *See Leiva-Perez*, 640 F.3d at 965 (noting "the bedrock requirement that stays must be denied to all petitioners who did not meet the applicable

---

[3] If the foreclosure issue is not mooted by the upcoming trial, and if Debtor still seeks a stay from this Court, then Debtor must file a new motion seeking a stay of the foreclosure sale upon receiving the Bankruptcy Judge's order.

irreparable harm threshold, *regardless of their showing on the other stay factors*"). Accordingly, Debtor's request for a stay pending appeal will be denied.

## IV.    DEBTOR'S PROPOSED STAY CONDITIONS

Debtor proposed multiple bond-free stay conditions for this Court's consideration. (Doc. 5 at 11). Because the Court is denying Debtor's requested stay, Debtor's requested stay conditions will be denied as moot.

## V.    JURISDICTION

In the reply, Debtor argues for the first time that the Bankruptcy Court does not have jurisdiction to continue its consideration of this case while the appeal is pending. (Doc. 12 at 6-7). Debtor relies on cases dealing with appeals from final district court judgments to the court of appeals. However, what is on appeal to this Court from the Bankruptcy Court is not a "judgment."

An appeal of an interlocutory order (rather than a final judgment) is not jurisdiction divesting. *Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) ("appeals of . . . interlocutory orders do not transfer jurisdiction to the appellate court and thus do not strip the district court of jurisdiction to conduct further proceedings in the case"). Moreover, an appeal of an interlocutory order requires permission from the Bankruptcy Court. Fed. R. Bankr. P. 8004.

Because what is on appeal to this Court is not a judgment, the first question is whether it is an interlocutory or final order. On this Court's brief review of the record, it appears to this Court that the bankruptcy court order on appeal is an interlocutory order dealing with certain objections to the proof of claim. Thus, the appeal would not be jurisdiction divesting. If this is an interlocutory order, the parties must brief this Court's jurisdiction to hear the appeal in their merits briefs.

To the extent it is Debtor's position that the November 13, 2025 order (and the December 22, 2025 order denying reconsideration) were "final" orders, Debtor has not made any such argument. In *In re Red Mountain Mach. Co.*, 471 B.R. 242, 248–49 (D. Ariz. 2012), this Court discussed at length what constituted a "final" order of the

bankruptcy court. In short summary, "A bankruptcy court order is final and thus appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In re Lewis*, 113 F.3d 1040, 1043 (9th Cir. 1997) (quotations and citations omitted).

Here, Debtor argues a stay is warranted because:

> Debtor has asserted that A.R.S. § 44-1202 mandate's forfeiture of all interest. On January 21 and 22, 2026, th[e] [Bankruptcy] Court is scheduled to take evidence on numerous issues related to allowance of post-petition interest and fees. Continuation of this proceeding parallel to the appellate review of the A.R.S. § 44-1202 issue would result in <u>a waste of resources by requiring the parties to put on evidence related to a potentially moot issue</u>.

(Doc. 5 at 3).

Debtor does not argue that any issues on appeal will be duplicative of the issues to be heard at the evidentiary trial. Given this lack of duplication (and only the possibility of mootness), to the extent a "final" order is on appeal, Debtor has conceded that the appeal does not impact the substance of the issues to be heard at the evidentiary trial. Thus, regardless of whether this appeal is of an interlocutory order or a final order, the Bankruptcy Court is not divested of jurisdiction over other proceedings in this case. Accordingly, Debtor's jurisdictional argument is rejected as an alternative basis to issue a stay.

**VI.   CONCLUSION**

Accordingly,

**IT IS ORDERED** that Debtor's Emergency Motion for Stay Pending Appeal (Doc. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that Debtor's request to implement bond-free stay conditions (Doc. 5) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Trustee James Cross shall engage in a settlement discussion with all interested parties before January 27, 2026.[4] If Mr. Cross is

---

[4] At the January 8, 2026 hearing regarding Debtor's motion to stay, Mr. Cross advised Judge Collins that he has "not been successful in getting the parties to try to meet to resolve this [matter]." (Doc. 11-1 at 23:4–10).

1  unable to hold this settlement discussion, he shall file a status report with the Court by
2  January 28, 2026 explaining why this was not possible (including all prior efforts he has
3  made since his appointment to coordinate such a discussion).
4      **IT IS FURTHER ORDERED** that Debtor must immediately send a copy of this
5  Order to Mr. Cross.
6      Dated this 16th day of January, 2026.

*James A. Teilborg*
Senior United States District Judge