**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Hauling LLC, | No. CV-26-00088-PHX-JAT |
| Appellant, | **ORDER** |
| v. | |
| Iron Rings Holdings LLC, et al., | |
| Appellees. | |

Appellant United Hauling LLC ("Appellant") appeals from: (1) the Under Advisement Order (the "Under Advisement Order"), (Doc. 5-12), entered by the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") on November 13, 2025, and (2) the Bankruptcy Court's Order denying Appellant's motion for reconsideration of the Under Advisement Order. In support, Appellant filed an Opening Brief. (Doc. 23). Appellees Iron Rings Holdings LLC and IG Holdings Inc. ("Appellees") filed a Response, and Appellant filed a Reply. (Docs. 26, 27). Also pending before the Court was Appellant's Renewed Emergency Motion for Stay Pending Appeal. (Doc. 28).[1]

## I.    BACKGROUND

In March 2024, Appellant signed a promissory note (the "Note") agreeing to borrow from and repay Appellees $400,000, plus interest. (Doc. 5-13 at 18; Doc. 5-13 at 22). The Note was secured by a deed of trust ("the Loan") that was recorded against a residential

---

[1] On March 16, 2026, Appellant filed a notice with the Court withdrawing its request for a stay pending resolution of this appeal. (Doc. 33). Accordingly, Appellant's Motion for Stay (Doc. 28) is denied as moot, which the Court addresses in greater detail below.

property located at 5443 East Skinner Drive, Cave Creek, AZ 85331 ("the Property"). (Doc. 5-13 at 18). The Note required monthly interest-only payments of $8,666.67 at a 26% annual interest rate, with all amounts due in full on March 6, 2025. (Doc. 5-13 at 22). Payments submitted at least thirty days late triggered a 31% per-annum default charge "over the [26%] interest rate," yielding an effective default rate of 57%.[2] (Doc. 5-13 at 22). Additionally, payments that were ten or more days late accrued a flat, late charge of $100 per day. (Doc. 5-13 at 22).

Appellant defaulted in August 2024 and filed for Bankruptcy in April 2025. (Doc. 10 at 2). In July 2025, Appellees filed their initial Proof of Claim ("POC"), asserting a secured claim of $594,193.66. (Doc. 5-6 at 1–3). In August, Appellees requested relief from the automatic stay required by 11 U.S.C. § 362(a) so that they could proceed with a trustee's sale of the Property. (Doc. 10-1 at 2). Appellant objected to the POC for various reasons, contending, as relevant here, that Appellees' POC overstated the amount owed under the Note. (Doc. 5-8 at 4–5). Although Appellees subsequently amended the POC to account for the overstatement—lowering the secured claim value to $566,826.99— Appellant still argued that the original POC violated Arizona Revised Statute ("A.R.S.") § 44-1202 and required forfeiture of *all* interest. (Doc. 5-10 at 1-4 (amended POC); Doc. 5-8 at 5-6). The Bankruptcy Court found no violation under A.R.S. § 44-1202 and issued the Under Advisement Order denying Appellant's claim objections on that basis. (Doc. 5-12 at 7). Appellant moved for reconsideration of the A.R.S. § 44-1202 ruling contained in the Under Advisement Order, (Doc. 5-13), which the Bankruptcy Court denied, (Doc. 10-5 at 2).

Appellant appeals from the Bankruptcy Court's Under Advisement Order and Order Denying Appellant's Motion for Reconsideration. (Doc. 1 at 5). Appellant appeals only the "rulings contained in the Orders that relate to A.R.S. § 44-1202." (Doc. 1 at 6). The narrow

---

[2] Following an evidentiary hearing held on January 21-22, 2026, the Bankruptcy Court issued an Order on February 25, 2026 noting that, although the Note states a default interest rate of 57%, "everyone involved in the loan transaction thought the default rate was 31%, i.e., 5% over the non-default rate." (Doc. 28-1 at 15–16). The Bankruptcy Court denied Appellees' claim for a 57% default-interest rate and reduced the rate to 31%. (Doc. 28-1 at 27).

question on appeal is whether the Bankruptcy Court correctly interpreted and applied § 44-1202 in concluding that Appellees' overstated POC did not constitute usury requiring the forfeiture of all interest.

## II.   STANDARD OF REVIEW

In deciding an appeal from a bankruptcy court order, district courts review the bankruptcy court's conclusions of law de novo. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009). Under de novo review, district courts evaluate the appealed decision independently and without deference to the bankruptcy court's determinations. *See In re Onecast Media*, Inc., 439 F.3d 558, 561 (9th Cir. 2006).

Statutory interpretation issues are legal conclusions subject to de novo review. *See In re Leite*, 112 F.4th 1246, 1250 (9th Cir. 2024).

## III.   DISCUSSION

Appellant raises three issues on appeal, arguing that the Bankruptcy Court erred by: (1) declining to analyze whether the Note's $100-per-day late charge constituted "indirect interest" subject to forfeiture under A.R.S. § 44-1202 ("Issue 1"); (2) "concluding the indirect interest was not subject to forfeiture under A.R.S. § 44-1202" ("Issue 2"); and (3) holding that Appellees, by overstating (and later amending) the POC, did not violate A.R.S. § 44-1202 ("Issue 3"). (Doc. 23 at 4).

The parties contest whether Appellant properly preserved Issues 1 and 2 for review on appeal. Because the parties agree that Issue 3 was preserved on appeal, the Court will begin with this issue before deciding whether the Court has jurisdiction to address the issues regarding Appellant's indirect-interest theory.[3]

---

[3] As an initial matter, the Court notes that Issues 1 and 2, as Appellant presents them, are internally inconsistent. In Issue 1, Appellant contends that the Bankruptcy Court failed to analyze whether the $100-per-day late charge constituted "indirect interest." In Issue 2, however, Appellant argues that the Bankruptcy Court erred by concluding that such indirect interest was not subject to forfeiture under A.R.S. § 44-1202. The Bankruptcy Court could not have reached a legal conclusion on an issue it allegedly failed to analyze in the first instance. As framed, these two issues cannot logically coexist—either the Bankruptcy Court did not analyze the issue, or the Bankruptcy Court did analyze the issue and, in doing so, reached an incorrect legal conclusion. The Court will determine whether it has jurisdiction to resolve these issues *infra* Section III, Subsection B.

Appellant only raises usury arguments under A.R.S. § 44-1202 and makes no argument that the Note's terms are unconscionable or contrary to public policy. *See Dobson*

- 3 -

**A.** **Forfeiture Under A.R.S. § 44-1202 re: Appellees' Overstated Proof of Claim**

As noted above, Appellees filed its initial POC in July 2025, asserting a secured claim of $594,193.66. (Doc. 5-6 at 1–3). On September 30, 2025, Appellant filed a motion objecting to the POC, arguing that Appellees had overstated the amount owed by $25,195.13. (Doc. 5-8 at 5). Appellant argued that Appellees' attempt to "exact payment in excess of the contract rate [was] usurious" and violated A.R.S. § 44-1202, meaning that Appellees had forfeited the right to collect any interest under the contract. (Doc. 5-8 at 5–6). The Bankruptcy Court found that Appellees' POC overstatement did not violate Arizona usury statutes or "give rise to forfeiture of all interest" because Appellees amended the POC to reflect the correct balance owed. (Doc. 5-12 at 6–7).

On appeal, Appellant contends this finding was error and that the Bankruptcy Court incorrectly interpreted A.R.S. § 44-1202. The statute provides:

> A person shall not directly or indirectly take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods or things in action, than the maximum permitted by law. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum of value shall, forfeit all interest.

A.R.S. § 44-1202. The Court will summarize each party's respective arguments before analyzing the statute.

### i. Appellant

Appellant argues that the statute "reaches far beyond the *actual receipt* of unlawful

---

*Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 393 P.3d 449, 456–57 (Ariz. 2017) (acknowledging that courts will "disregard the parties' intent and refuse to enforce contract terms that are unconscionable, illegal, or otherwise against public policy"); *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 57 (Ariz. 1995) ("[E]ven if the contract provisions are consistent with the reasonable expectations of the party[,]" they are unenforceable if they are oppressive or unconscionable." (internal quotations and alterations omitted)); *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) (an unconscionable contract is unenforceable and "[a] contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties").

Because Plaintiff failed to challenge the Note or its terms on these bases, the Court will not sua sponte address these possible arguments. As the Court acknowledged above, the Bankruptcy Court reduced the Note's 57% default interest rate to 31% in its February 25, 2026 Order. (Doc. 28-1 at 27).

- 4 -

interest" and encompasses situations in which a lender reserves the right—through "filing and maintaining a sworn Proof of Claim"—to payment of unlawful interest. (Doc. 23 at 5–11). Appellant's argument boils down to its interpretation of the following language in the statute: (1) "in money, goods or things in action, or in any other way" and (2) "reserving."

Section 44-1202 instructs that a person shall not "take or receive in money, goods or *things in action, or in any other way*" any sum greater than that permitted by law. Appellant defines a "thing in action," as "an intangible right to payment or performance enforceable by legal action, as opposed to physical property in possession." (Doc. 23 at 9). Appellant contends that a POC is a "thing in action" because it is "the formal mechanism by which a creditor invokes and preserves its 'right to payment' within the bankruptcy process." (Doc. 23 at 11 (citing Fed. R. Bankr. P. 3001)).

Appellant contends that Appellees, by filing an overstated POC, impermissibly reserved the right to collect excess value "as a 'thing in action, or in any other way[,]' thus triggering mandatory forfeiture" under § 44-1202. (Doc. 23 at 6, 10–11). Appellant acknowledges that "reserve" ordinarily means "to keep or retain for future use," but argues that the meaning is different in the lending context because the "natural object of reservation [in this context] is not cash but the *right to collect*." (Doc. 23 at 6 (emphasis added)). Appellant asks this Court to find that "forfeiture does not depend on prior receipt of funds," and that the forfeiture penalty applies to "unlawful entitlements" regardless of when or whether payment is actually made. (Doc. 23 at 7, 12). Appellant contends that this interpretation gives independent meaning to the word "reserving" because interpreting "reserving" as requiring prior receipt of funds would collapse that term into the word "receiving" and render the "Legislature's deliberate word choice superfluous." (Doc. 23 at 7); A.R.S. § 44-1202 ("Any person, contracting for, *reserving **or** receiving*, directly or indirectly, any greater sum of value shall, forfeit all interest.") (emphasis added)).

Appellant further argues that Appellees' subsequent amendment of the POC did not excuse the alleged usury violation because "nothing in A.R.S. § 44-1202 permits such retroactive cure." (Doc. 23 at 12). Appellant reasons that allowing "post-objection

amendment" to nullify the forfeiture penalty under the statute would render § 44-1202 "unenforceable in bankruptcy, where claims are necessarily asserted before payment." (Doc. 23 at 12).

### ii. Appellees

Appellees contend that A.R.S. § 44-1202 is inapplicable absent (1) a showing of unlawful intent and (2) the actual taking or receiving of excess value. (Doc. 26 at 6).

Appellees claim that Appellant's theory disregards controlling Arizona law holding that unlawful intent—rather than the "good-faith miscalculations of interest" allegedly at issue here—is required to establish usury. (Doc. 26 at 6). Because there is "no evidence of unlawful intent" to commit usury, Appellees argue that their "inadvertent computational error[]" cannot give rise to forfeiture under A.R.S. § 44-1202.

Appellees further argue that A.R.S. § 44-1202 mandates forfeiture for the actual taking or receipt of unlawful value, but is inapplicable to "assertions, overstated demands, or procedural filings." (Doc. 26 at 8). Appellees contend that a person may "take or receive" unlawful value by (1) contracting for, (2) reserving, or (3) receiving an amount exceeding the maximum amount permitted by law. (Doc. 26 at 8–9 (citing A.R.S. § 44-1202)). Appellees argue that a bankruptcy POC is not a mechanism by which to contract for, reserve, or receive value, and is instead a written statement of the creditor's claim that is filed within the judicially supervised bankruptcy process. (Doc. 26 at 9). Appellees assert that a POC "is submitted so that disputed amounts may be examined, corrected and adjudicated," and "does not amend the loan agreement, alter the agreed rate, extract funds, or retain value." (Doc. 26 at 9).

Appellees further contend that Appellant's interpretation of the statute—i.e., that an overstated POC "reserves" a "thing in action" and is subject to forfeiture regardless of whether unlawful interest is actually extracted—would transform § 44-1202 into a strict-liability provision mandating forfeiture for any computational error in a POC. (Doc. 26 at 12–13). Appellees ask the Court to find that their conduct does not trigger forfeiture under § 44-1202 and affirm the Bankruptcy Court's rulings. (Doc. 26 at 13).

- 6 -

### iii.   Legal Standard

In determining whether a given transaction is usurious, courts look to the substance of the transaction, rather than its form, to determine whether the elements of usury are present. *Britz v. Kinsvater*, 351 P.2d 986, 989 (Ariz. 1960). Under Arizona law, the elements of usury are: "(1) [a]n unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law." *Id.* If all five elements are satisfied, the transaction is usurious, regardless "of whatever form it may assume, and despite any disguise it may wear." *Id.* If one or more elements is not satisfied, the transaction is not usurious, though it "may bear the outward marks of usury." *Id.* (quoting *Seargeant v. Smith*, 163 P.2d 680, 681 (Ariz. 1945)).

"If an agreement can reasonably be construed as non-usurious, it should be so construed," and "[t]he courts will not hold a contract to be in violation of the usury laws unless upon a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws." *Seargeant*, 163 P.2d at 682. Intent to commit usury is presumed if "a loan agreement is usurious on its face." *Kissell Co. v. Gressley*, 591 F.2d 47 (9th Cir. 1979).

### iv.   Analysis

The issue on appeal—whether an overstated Proof of Claim in a bankruptcy proceeding (that was later amended to reflect the correct amount owed under the Note) constitutes usury and mandates forfeiture of all interest under A.R.S. § 44-1202—appears to be an issue of first impression. Answering this question requires the Court to determine whether Appellees, by filing its POC with the Bankruptcy Court, "reserved" any greater sum of value than permitted by Arizona law.

Section 44-1202 states that "[a]ny person . . . reserving . . . any greater sum of value shall, forfeit all interest." Neither party cites to—and the Court's independent research did

not reveal—any case interpreting what "reserving" means under the statute. Appellant urges this Court to interpret "reserving" to mean reserving the right to collect future interest. (Doc. 23 at 6-8). Appellees contend that "reserve" means "to keep back . . . for future or special use," and allege that they could not have kept back or retained something they never took or received in the first instance. (Doc. 26 at 10 (citing Black's Law Dictionary (6th ed. 1990)).

As noted above, this Court reviews issues of statutory interpretation de novo. *See In re Leite*, 112 F.4th at 1250. A court's "task in statutory construction is to effectuate the text if it is clear and unambiguous." *State v. Gordon in & for Cnty. of Mohave*, 581 P.3d 215, 218 (Ariz. 2025) (quoting *In re Drummond*, 543 P.3d 1022, 1025 (Ariz. 2024)). To effectuate a statute's text, courts begin by looking to the statute's plain language and assign words their "ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *Id.* (quoting *State v. Luviano*, 530 P.3d 388, 391 (Ariz. 2023)). When the statute's plain language is unambiguous, courts apply the express terms of the provision "without resorting to secondary methods of construction." *Id.* at 219 (quoting *Mussi v. Hobbs*, P.3d 1131, 1134 (Ariz. 2023)).

Black's Law Dictionary defines reserve to mean "something retained or stored for future use; esp., a fund of money set aside by a bank or an insurance company to cover future liabilities." *Reserve*, Black's Law Dictionary (12th ed. 2024). It defines reservation to mean "a keeping back or withholding" or "that which is kept back or withheld." *Reservation*, Black's Law Dictionary (12th ed. 2024).

These definitions are consistent with the Court's previous Order, which found that "reserved" in the lending context typically means something akin to "impounded escrow funds." (Doc. 15 at 5); *see Escrow*, Black's Law Dictionary (12th ed. 2024) ("an account held in trust or as security" that is also known as "escrow account; impound account; *reserve account*") (emphasis added). When a debtor makes a payment, the lender may "reserve" those funds for its own use and apply them to various expenses as needed. *See Account*, Black's Law Dictionary (12th ed. 2024) (defining an "impound account," or

"reserve account" as "an account of accumulated funds held by a lender for payment of taxes, insurance, or other periodic debts against real property"). Because the plain meaning of "reserve" in the lending context refers to retaining, storing, or setting aside funds for a future purpose, the question is whether Appellees "reserved" interest beyond what the Note entitled them to receive. The Court concludes they did not. Indeed, Appellant concedes that Appellees did not obtain funds in excess of what was owed under the Note; without receipt of those funds, Appellees could not possibly "reserve" them to apply toward future, non-principal expenses.

Even if the Court were to accept Appellant's theory that "reserving" as contemplated by A.R.S. § 44-1202 means "reserving the right to collect," the Court is not convinced that a POC, as opposed the Note itself, functions to reserve a right to collect anything.[4] Indeed, a POC is a "statement by the creditor that he or she has a right to payment." *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 225 (2017); 11 U.S.C. § 101 (a "claim" is a right to payment). And although POCs are considered "prima facie evidence of the claim's validity and amount," Fed. R. Bankr. P. 3001, they are also subject to objection and may be disallowed if the objection is well-taken. 11 U.S.C. § 502 (proof of claim is deemed "allowed" unless a party in interest objects); *see Midland Funding, LLC*, 581 U.S. at 225 (proof of claim is "subject to disallowance"); *In re Taylor*, No. 08-60242-13, 2008 WL 4723364, at *14 (Bankr. D. Mont. Oct. 23, 2008) (sustaining debtor's objection to lender's overstated proof of claim and allowing a portion the claim); *In re Van Nice*, No. 07-60080-13, 2007 WL 2178069, at *5 (Bankr. D. Mont. July 26, 2007) (sustaining objection to the proof of claim because it was overstated by $2,090 and reducing the claim by the overstated amount). Because a POC is merely a statement of a lender's claim, which can be "disallowed" or reduced pursuant to a well-founded objection,

---

[4]   All the cases Appellant cites—that is, out-of-state cases applying materially different usury statutes—examine whether the underlying transaction or loan agreement itself demanded interest beyond the maximum permitted by the law in those jurisdictions. (Doc. 23 at 10 (citing Minnesota cases and a Ninth Circuit case applying Washington law)). Appellant identifies no authority holding that a POC is independently sufficient to establish usury, and Appellant does not argue that a POC is a contract or binding agreement between the parties.

it does not serve to unalterably reserve a right to collect, as Appellant alleges.

In sum, the Court finds that Appellees' overstated POC did not reserve unlawful interest that triggers the forfeiture penalty under § 44-1202.

## B. Appellant's Indirect-Interest Theory

Appellant argues that the Note's $100-per-day late charge, when combined with the default interest rate, increased Appellees' effective rate of return beyond that permitted by Arizona law, "thereby constituting indirect interest subject to forfeiture under A.R.S. § 44-1202." (Doc. 23 at 4).

Appellees argue that this Court lacks jurisdiction to address Appellant's indirect-interest theory because Appellant failed to argue it before the Bankruptcy Court. (Doc. 26 at 3). Appellant argues that its objection to the Bankruptcy Court's Under Advisement Order "squarely raised A.R.S. § 44-1202 forfeiture based on an overstatement of interest and fees beyond what the Note permits." (Doc. 27 at 3). Appellant further contends that even if its indirect-interest theory is "framed as refinement," this Court should still reach the merits of this theory because it possesses "discretion to resolve record-based legal issues." (Doc. 27 at 6 (citing *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985)).

After closely reviewing Appellant's Claim Objections and its arguments seeking reconsideration of the Bankruptcy Court's Under Advisement Order, (Docs. 5-8, 5-13), the Court finds that Appellant never argued its indirect-interest theory before the Bankruptcy Court. Indeed, Appellant argued that the Note's $100-per-day late-fee provision was "facially punitive, unreasonable, [] unrelated to actual damages," and should be prohibited as a penalty "disguised as fees or interest." (Doc. 5-8 at 13). Arguing that the late fee should be treated as an unenforceable penalty is wholly different from arguing that the fee transforms the Note into a usurious transaction mandating forfeiture of all interest. And Appellant's motion seeking reconsideration of the Under Advisement Order regarding the Bankruptcy Court's A.R.S. § 44-1202 ruling did not mention the $100-per-day late fee at all. (Doc. 5-13 at 1-15).

Issues that were not raised before the Bankruptcy Court are generally considered waived on appeal. *E.g.*, *In re Lucas Dallas, Inc.*, 185 B.R. 801, 807 (B.A.P. 9th Cir. 1995); *In re Kelly*, 499 B.R. 844, 856 (S.D. Cal. 2013), *aff'd*, 633 F. App'x 652 (9th Cir. 2016); *see also In re Sienega*, 619 B.R. 405, 411 (B.A.P. 9th Cir. 2020), *aff'd*, 18 F.4th 1164 (9th Cir. 2021) ("We are not obligated to consider arguments raised for the first time on appeal."). However, the Ninth Circuit Court of Appeals has found "it is within the district court's discretion whether to consider issues not presented to the bankruptcy court." *Matter of Pizza of Hawaii, Inc.*, 761 F.2d at 1377.

Appellant waived its indirect-interest theory by failing to raise it before the Bankruptcy Court, and the Court need not consider it on appeal. In fact, it appears as though the Bankruptcy Court has already impliedly ruled on the $100-per-day late-fee issue. (Doc. 28-1 at 6, 17–18). The Court will provide a summary of the timeline of events. On December 31, 2025, Appellant filed its notice of appeal to this Court. (Doc. 1 at 7). On January 21-22, 2026, the Bankruptcy Court held an evidentiary hearing to evaluate Appellant's confirmation plan, determine whether to lift the automatic stay, and consider whether the $100-per-day late-fee provision was an unenforceable penalty under Arizona law. (Doc. 15 at 6; Doc. 26 at 14). On February 25, 2026, the Bankruptcy Court issued an Order granting Appellees relief from the automatic stay and denying confirmation of Appellant's plan. The Order further found that the Note's "$100/day late charge constitute[d] an unenforceable penalty under Arizona law" because the fee failed to reasonably approximate Appellees losses and would result "in a recovery untethered to any demonstrated incremental administrative or collection costs." (Doc. 28-1 at 2).

Because Appellant chose to appeal to this Court (1) before arguing its indirect-interest theory before the Bankruptcy Court, and (2) before the Bankruptcy Court held the January evidentiary hearing and ruled on the evidence presented at that hearing, this Court is placed in a difficult position. That is because, while Appellant asks this Court to characterize the $100-per-day late fee as indirect interest subject to forfeiture, the Bankruptcy Court has, during the pending appeal, already ruled that the fee is an

unenforceable penalty. In so doing, the Bankruptcy Court has impliedly ruled that the flat, $100-per-day day late fee is not interest, as Appellant alleges before this Court. Appellant effectively asks the Court to reverse (at least in part) a Bankruptcy Court order that is not before it on review.[5] Given the jurisdictional questions this raises, the Court declines to exercise its discretion to review the indirect-interest theory on the merits. 28 U.S.C. § 158 (vesting district courts with jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court).

Moreover, even if this Court were to disagree with the Bankruptcy Court and decide the $100 per day late fee *is* interest, Appellant still must demonstrate that Appellees contracted for an amount exceeding "the maximum permitted by law" to establish usury under A.R.S. § 44-1202. Prior to 1980, the "maximum permitted by law" figure referred to the interest-rate ceiling as defined by the general usury statute in existence at that time. *Wieman v. Roysden*, 802 P.2d 432, 437 (Ariz. Ct. App. 1990). "However, in 1980 . . . the legislature removed the interest rate ceiling in the general usury statute, allowing the parties to contract in writing for any interest rate." *Id.*; A.R.S. § 44-1201(A)(2) ("For any loan, indebtedness or obligation other than medical debt, interest shall be at the rate of ten percent a year, *unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to*.") (emphasis added). The fact remains that Appellant contracted for the late fee. Even if the fee did somehow constitute "disguised" or "indirect" interest, thereby increasing the interest rate defined by the Note, the Court is unconvinced that this would constitute a usury violation when the usury statute authorizes parties to agree to *any* rate of interest. A.R.S. § 44-1202.

---

[5]    Indeed, the Court is aware of no authority that would permit the Bankruptcy Court's February Order (characterizing the $100-per-day day late fee as an unenforceable penalty) to co-exist with the Order Appellant desires from this Court (that is, an Order characterizing the fee as indirect interest rendering the Note usurious). It is the Court's understanding that the late fee must be one or the other—it cannot be both stricken as an unenforceable penalty *and* constitute interest that would transform the Note into a usurious contract demanding forfeiture of all interest under § 44-1202. And Appellant—by virtue of the timing of its appeal—is unable to explain to the Court how the Bankruptcy Court's characterization of the late fee as an unenforceable penalty, rather than interest, is error.

- 12 -

### C. Renewed Emergency Motion to Stay Pending Appeal

The Bankruptcy Court held an evidentiary trial from January 21-22, 2026 to determine whether to (1) lift the automatic stay required by 11 U.S.C. § 362(a) so that Appellees could proceed with a trustee's sale of the Property, and (2) confirm Appellant's plan to protect Appellees' secured claim. (Doc. 15 at 6).

On February 25, 2026, the Bankruptcy Court entered an Order granting Appellees relief from the automatic stay and denying confirmation of Appellant's plan. (Doc. 28-1 at 2). The Bankruptcy Court directed Appellees to schedule the trustee's sale "no earlier than March 20, 2026." (Doc. 28 at 2). Appellees informed this Court that the trustee's sale is currently set for noon on March 24, 2026. (Doc. 31 at 5).

Following the Bankruptcy Court's February 25, 2026 Order, Appellant filed a Renewed Emergency Motion for Stay Pending Appeal.[6] (Doc. 28). Therein, Appellant proposed various bond-free stay conditions to "protect [Appellees] while preserving [Appellant's] right to meaningful appellate review." (Doc. 28 at 9). On March 16, 2026, Appellant filed a notice with the Court withdrawing its Motion for Stay. (Doc. 33). Appellant explained that, given its obligations to prepare the Property for the upcoming trustee's sale, it is no longer able to fulfill the bond-free stay conditions proposed in the Renewed Emergency Motion for Stay Pending Appeal. (Doc. 33). Because Appellant has withdrawn its request for a stay pending appeal, the stay motion is denied as moot. (Doc. 28).[7]

The Court recognizes the impending sale of the Property is scheduled for March 24, 2026. The Court also understands that if the Property is sold, the issues raised in this appeal will likely be rendered moot because the Ninth Circuit Court of Appeals is unable to unwind the sale once it occurs. *See In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1171 (9th Cir. 1988) ("Bankruptcy's mootness rule applies when an appellant has failed to obtain a

---

[6]    This Court denied Appellant's initial Emergency Motion for Stay Pending Appeal, (Doc. 5), because Appellant failed to demonstrate irreparable harm. (Doc. 15).

[7]    The stay request would have been denied as moot regardless of Appellant's notice of withdrawal because the Court is affirming the Bankruptcy Court's orders.

stay from an order that permits a sale of a debtor's assets. Whether an order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal."). Given this fact, the Court will grant a 7-day stay of the trustee's sale until March 31, 2026 to allow Appellant (if they choose) to attempt to obtain a stay pending appeal with the Ninth Circuit Court of Appeals (assuming an appeal is filed). If the Court of Appeals does not grant a stay by March 31, 2026, Appellees may go forward with the sale after March 31, 2026.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED AFFIRMING** the Bankruptcy Court's (1) Under Advisement Order entered on November 13, 2025 (Doc. 5-12) and (2) Order Denying Appellant's Motion for Reconsideration entered from the bench on December 22, 2025 (Doc. 10-5 at 2). The Clerk of the Court shall enter judgment accordingly as required by the Federal Rule of Bankruptcy Procedure 8024(a).

**IT IS FURTHER ORDERED** that Appellant's Renewed Emergency Motion for Stay Pending Appeal (Doc. 28) is **denied as moot**.

**IT IS FURTHER ORDERED** granting a temporary stay as follows: to allow Appellant to seek a stay with the Ninth Circuit Court of Appeals, the trustee's sale—currently scheduled for noon on March 24, 2026—shall be postponed until after March 31, 2026. If the Court of Appeals does not grant a stay on or before March 31, 2026, Appellees may reschedule and proceed with a trustee's sale of the Property after that date.

Dated this 18th day of March, 2026.

James A. Teilborg
Senior United States District Judge

- 14 -